**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRE DANIELS-HALL; DAVID
HAMBLEN,

        *Plaintiffs-Appellants,*

        v.

NATIONAL EDUCATION ASSOCIATION,
a Washington, D.C. corporation;
NEA MEMBER BENEFITS
CORPORATION, a Delaware
corporation; SECURITY BENEFIT
CORPORATION, a Kansas
intermediate stock holding
company; SECURITY BENEFIT LIFE
INSURANCE COMPANY, a Kansas
stock life insurance company;
SECURITY BENEFIT GROUP, a Kansas
holding company and management
and financial services company;
SECURITY DISTRIBUTORS, INC., a
Kansas corporation; DENNIS BERNIE
VAN ROEKEL, Director of NEA
Member Benefits Corporation;
NATIONWIDE LIFE INSURANCE
COMPANY, an Ohio corporation;
WILLIAM BJORK, Director of NEA
Member Benefits Corporation; AL
MANCE, Director of NEA Member
Benefits Corporation;

SHERIDAN PEARCE, Director of NEA
Member Benefits Corporation;
TERRI SANDERS, Director of NEA
Member Benefits Corporation;
SUSAN KUZIAK, Director of NEA
Member Benefits Corporation;
SARAH BORGMAN, Director of NEA
Member Benefits Corporation;
LILY ESKELSEN, Chairman of the
Board of Directors of NEA
Member Benefits Corporation,
          *Defendants-Appellees.*

No. 08-35531
D.C. No.
3:07-cv-05339-RBL
OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
July 10, 2009—Seattle, Washington

Filed December 20, 2010

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Derek W. Loeser, Keller Rohrback LLP, Seattle, Washington, argued the cause for plaintiffs-appellants. Karin B. Swope, Keller Rohrback LLP, Seattle, Washington, filed the briefs. Lynn Lincoln Sarko, Tana Lin, and Ian J. Mensher, all of Keller Rohrback LLP, Seattle, Washington, also were on the briefs, as was Jeffrey C. Engerman, Los Angeles, California.

Julia Penny Clark, Bredhoff & Kaiser, PLLC, Washington, D.C., argued the cause for all defendants-appellees and filed the brief for defendant-appellee NEA. Jonathan Hacker, O'Melveny & Myers LLP, Washington, D.C., signed the

same brief on behalf of defendant NEA MBC and the individual defendants. Douglas L. Greenfield and Abigail V. Carter, both of Bredhoff & Kaiser, PLLC, Washington, D.C., also were on the brief for defendant NEA, and Bob Eccles, O'Melveny & Myers LLP, Washington, D.C., also was on the brief for defendant NEA MBC and the individual defendants.

Nicholas T. Christakos, Sutherland Asbill & Brennan LLP, Washington, D.C., filed the brief for defendants-appellees Security Benefit Life Insurance Company, Security Distributors, Inc., Security Benefit Corporation, and Security Benefit Group, Inc. Steuart H. Thomsen, W. Mark Smith, and Phillip E. Stano, all of Sutherland Asbill & Brennan LLP, Washington, D.C., also were on the brief.

David J. Burman, Perkins Coie LLP, Seattle, Washington, filed the brief for defendant-appellee Nationwide Life Insurance Company. Charles Platt and Emily Meyers, both of Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, also were on the brief, as were David Bowker and Mark Bieter, both of Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.

Melissa Bowman, U.S. Department of Labor, filed a brief for the Secretary of Labor as amicus curiae in support of the defendants-appellees. Nathaniel I. Spiller, Counsel for Appellate and Special Litigation, Timothy D. Hauser, Associate Solicitor, and Carol A. De Deo, Deputy Solicitor of Labor for National Operations, all of the U.S. Department of Labor, also were on the brief.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the National Education Association established or maintained an employee pension benefit

plan under the Employee Retirement Income Security Act of 1974 by endorsing and aggressively marketing certain tax-sheltered annuities.

I

A

Both Jerre Daniels-Hall and David Hamblen (collectively, "Plaintiffs") are members of the National Education Association ("NEA") and employees of local public school districts. Daniels-Hall is an employee of the South Kitsap School District in Washington, and Hamblen is an employee of El Dorado Union High School District in California.

The NEA is a public employee labor union, consisting of over 3.2 million teachers, administrators, and other educators in public schools throughout the United States. The NEA provides numerous benefits to its members, including insurance coverage, discounts, and other services. Many of those benefits are provided through NEA's Member Benefits Corporation ("NEAMBC"), a wholly owned subsidiary of the NEA.

According to the Complaint, in the 1990s, the NEA, through the NEAMBC, worked with defendant Nationwide Life Insurance Co. ("Nationwide") and, after 2000, with defendant Security Benefit Life Insurance Company and its subsidiaries (collectively, "Security Benefit") to offer the NEA "Valuebuilder Plan" (the "Plan") to its members.[1] The Plan is "purported to be a section 403(b) retirement plan."[2]

---

[1]The facts in this section are taken from the Complaint. We assume they are true for the purpose of determining whether the district court erred in granting Defendants' motion to dismiss.

[2]The Department of Labor ("DOL") describes section 403(b) retirement plans as follows:

A tax-sheltered annuity (TSA) program under section 403(b) of the Internal Revenue Code (Code), also known as a "403(b) plan"

The NEA "selected Nationwide, and then Security Benefit as the exclusively endorsed" providers of the Plan. After selecting Nationwide and Security Benefit, NEA designed certain annuities in conjunction with them. These annuities were called "Valuebuilder annuities." NEA negotiated the terms of the Valuebuilder annuities, exclusively endorsed the Valuebuilder annuities as favorable retirement savings vehicles, and aggressively marketed the Valuebuilder annuities to NEA members. NEA also monitored and managed the Valuebuilder annuities for its participants.

In exchange for the NEA's role in marketing the Valuebuilder annuities, Nationwide and Security Benefit paid royalties and annual fees to the NEA, took on the salaries of 110 NEAMBC representatives, and contributed to NEA charitable foundations. NEA's royalty income from Security Benefit alone amounted to approximately $2 million per year. Nationwide and Security Benefit, in turn, received fees from investment companies whose mutual funds were made available through the Valuebuilder annuities.

The NEA did not fully disclose to its members the nature or amount of the payments it received from Nationwide and Security Benefit, or the fact that Nationwide and Security Benefit received payments from investment companies whose

is a retirement plan for employees of public schools, employees of certain tax-exempt organizations, and certain ministers. Under a 403(b) plan, employers may purchase for their eligible employees annuity contracts or establish custodial accounts invested only in mutual funds for the purpose of providing retirement income. Annuity contracts must be purchased from a state licensed insurance company, and the custodial accounts must be held by a custodian bank or IRS approved non-bank trustee/custodian. The annuity contracts and custodial accounts may be funded by employee salary deferrals, employer contributions, or both.

DOL Field Assistance Bulletin No. 2007-02, *1 (July 24, 2007).

mutual funds were included in the Valuebuilder annuities. Instead, the NEA marketed the Valuebuilder annuities provided by Nationwide and Security Benefit as the most favorable retirement option for its members, despite the fact that Valuebuilder annuities charged fees that were as much as ten times those charged on comparable annuity contracts. Plaintiffs participated in their school district employers' section 403(b) retirement plans, and selected Valuebuilder annuities —instead of other annuities made available by their employers—because of the NEA's enthusiastic endorsement.

In essence, Plaintiffs allege that the NEA knowingly duped them into purchasing unattractive annuities by "creating an atmosphere of trust and confidence that was exploited by Defendants for their financial gain." Plaintiffs purport to represent a class of more than 57,000 similarly situated NEA members on whose behalf public school district employers across the country purchased Valuebuilder annuities totaling over $1 billion.

B

Plaintiffs' theory of the case is that by negotiating, endorsing, marketing, and promoting the NEA Valuebuilder annuities, the NEA "established or maintained" an "employee pension benefit plan" within the coverage of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See* 29 U.S.C. § 1002(2)(A). Plaintiffs contend that the NEA and NEAMBC are "plan fiduciaries" under ERISA, and that by, *inter alia*, failing to ensure that the fees charged by Nationwide and Security Benefit in connection with the annuity contracts were reasonable, NEA and NEAMBC breached their fiduciary duties. Plaintiffs allege that Nationwide and Security Benefit were plan fiduciaries as well, and that they also breached their duties by, *inter alia*, selecting unreasonably high-cost mutual funds for inclusion in the Valuebuilder annuities. Plaintiffs brought this action for breach of fiduciary duties, and other

violations of ERISA, against NEA, NEAMBC, NEAMBC's directors, Nationwide, Security Benefit, and Security Benefit's involved subsidiaries (collectively, "Defendants"), seeking damages, equitable relief, costs, and fees.

In their motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants argued that ERISA does not cover section 403(b) retirement plans that public school systems provide for their employees. More specifically, Defendants argued that, as a matter of law, tax-deferred section 403(b) plans cannot be "established or maintained" by employee organizations such as the NEA.

The district court was "convinced that if the NEA could legally establish or maintain" § 403(b) annuity plans, then Plaintiffs would have "demonstrat[ed] that it did so as a factual matter." But the court then explained that "employee organizations simply cannot, as a matter of law, establish or maintain § 403(b) annuity plans." The court concluded that since "the § 403(b) Annuities" were "not 'plans' under ERISA," the court lacked subject matter jurisdiction "over the Plaintiffs' claim arising out of those annuities." On May 23, 2008, the court dismissed Plaintiffs claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs timely appealed.[3]

---

[3]The Secretary of Labor has primary authority to interpret and to enforce the fiduciary, reporting and disclosure provisions of Title I of ERISA. *See* 29 U.S.C. §§ 1002(2)(B), 1002(13), 1002(14). After oral argument, we solicited the views of the Department of Labor on the question of whether the NEA was legally capable of establishing a plan subject to Title I of ERISA offering section 403(b) annuities. On September 8, 2009, the Secretary of Labor submitted an amicus brief answering that question in the negative.

## II

### A

Before addressing the merits, we must express a disagreement with the district court's analysis of jurisdiction. It dismissed Plaintiffs' claims for lack of subject matter jurisdiction because it concluded that the "Valuebuilder Plan" was not an employee benefit pension plan subject to ERISA. But to ask whether the alleged Plan is subject to ERISA is a merits question. "Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (internal quotation marks omitted) (holding that the scope of federal securities law raises a question on the merits, not an issue of subject-matter jurisdiction). Whether a particular "Plan" is an employee benefit pension plan, and thus whether a particular defendant is subject to ERISA, "is [therefore] a question on the merits of the claim, not an issue of subject matter jurisdiction." *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009); *see also Morrison*, 130 S. Ct. at 2877. Because Plaintiffs alleged a cause of action arising under ERISA, it is clear that the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

However, we need not remand because of the district court's error. "Since nothing in the analysis of the court[ ] below turned on the mistake, a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion." *Morrison*, 130 S. Ct. at 2877. Instead, "we proceed to address whether [plaintiff]s' allegations state a claim." *Id.*

### B

We review *de novo* the district court's dismissal for failure to state a claim. *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d

1021, 1024 (9th Cir. 2009). We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* at 1031. We can affirm "on any ground raised below and fairly supported by the record." *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1226 (9th Cir. 2009); *see also Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000) ("If support exists in the record, a dismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning.").

Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the "complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994)). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).' " *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

In addition to the Complaint itself, we have taken into consideration two documents on which the Complaint necessarily relies. First, we have taken into consideration the prospectus for the "NEA Valuebuilder Variable Annuity" distributed by Security Benefit on May 1, 2007. Plaintiffs quoted this prospectus in their Complaint and provided the web address where the prospectus could be found online. Plaintiffs thereby

incorporated the prospectus into the Complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that courts ruling on 12(b)(6) motions to dismiss may take into consideration "documents incorporated into the complaint by reference"). Second, we take into consideration information posted on certain NEA and NEAMBC web pages that Plaintiffs referenced in the Complaint and included in the record on appeal. Plaintiffs directly quoted the material posted on these web pages, thereby incorporating them into the Complaint. *Id.*

We also have taken into consideration the list of approved 403(b) vendors displayed publicly on the respective web sites of the South Kitsap and El Dorado School Districts. It is appropriate to take judicial notice of this information, as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein. *See* Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Tellabs*, 551 U.S. at 322 (noting that courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice"); *see also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008) (taking judicial notice of drug labels taken from the FDA's website); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services web site).

## III

[1] ERISA was enacted to protect, *inter alia*, "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). ERISA applies to "any employee benefit plan if it is established or maintained . . . by any

employer . . . or . . . by any employee organization . . . or by both." *Id.* § 1003(a)(1)-(3).[4] "Employee benefit plans" covered by ERISA come in two types. *Id.* § 1002(3). The first type, the "employee welfare benefit plan," provides medical benefits and any benefits "other than pensions on retirement or death." *Id.* § 1002(1). By contrast, the second type, the "employee pension benefit plan," "provides retirement income" or "results in a deferral of income [until retirement]." *Id.* § 1002(2)(A)(i)-(ii). The second type of benefit plan is at issue in this case.

**[2]** An "employee pension benefit plan" is:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program
>
> > (i) provides retirement income to employees, or
> >
> > (ii) results in a deferral of income by employees . . . .

*Id.*[5] ERISA imposes strict fiduciary duties on persons who

---

[4]ERISA defines the term "employee organization" to mean "any labor union or any organization . . . , [or] association . . . in which employees participate and which exists for the purpose . . . of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." 29 U.S.C. § 1002(4). It is not disputed that the NEA is an employee organization.

[5]The ERISA definition of "employee pension benefit plan" specifies additional details not relevant to this appeal, involving the methods of calculating contributions, benefits and distribution timing. The provision also grants the Secretary the power to prescribe rules treating severance pay arrangements and supplemental retirement income payments as welfare plans rather than pension plans. 29 U.S.C. § 1002(2)(A)-(B).

administer "employee pension benefit plans." *See, e.g., id.* § 1002(21)(A) (defining persons qualifying as plan fiduciaries); *see also id.* § 1101 *et seq.* (establishing specific fiduciary duties and liability for breaches of these duties).

Although ERISA's definition of "employee pension benefit plan" is quite broad, there are several important exceptions. Section 1003(b), for example, exempts "governmental plans" from ERISA's regulatory sphere. *Id.* § 1003(b)(1) ("The provisions of [Title I] shall not apply to any employee benefit plan if—such plan is a governmental plan."). ERISA defines a "governmental plan" as a plan "established or maintained for its employees by the Government of the United States, by the government of any State *or political subdivision thereof*, or by any agency or instrumentality of the foregoing." *Id.* § 1002(32) (emphasis added).

**[3]** The Department of Labor ("DOL") has created a separate regulatory safe harbor that exempts certain section 403(b) retirement plans from ERISA's requirements. This safe harbor provides that "a program for the purchase of an annuity contract or the establishment of a custodial account described in section 403(b) of the Internal Revenue Code of 1954 (the Code), pursuant to salary reduction agreements . . . which meets the requirements of 26 C.F.R. 1.403(b)-1(b)(3) *shall not be* 'established or maintained by an employer' as that phrase is used in [Title I]." 29 C.F.R. § 2510.3-2(f) (emphasis added). Employers wishing to take advantage of the safe harbor must ensure that participation in the plan "is completely voluntary for employees," and must comply with the various requirements set forth in 29 C.F.R. § 2510.3-2(f). *Id.*[6]

---

[6]For example, if the "sole involvement of the employer" is "limited to . . . [p]ermitting annuity contractors (which term shall include any agent or broker who offers annuity contracts or who makes available custodial accounts within the meaning of section 403(b)(7) of the Code) to publicize their products to employees," the employer will not have "established or maintained" an ERISA plan. 29 C.F.R. § 2510.3-2(f)(3)(i).

IV

Plaintiffs allege in the first sentence of their Complaint that they are "participants and beneficiaries of the [NEA] Valuebuilder Plan, an Internal Revenue Code section 403(b) tax deferred annuity program established and maintained by Defendants NEA and NEAMBC." Plaintiffs urge us to find that this "Valuebuilder Plan" is an employee pension benefit plan subject to ERISA. But before we can make any determination about whether this Plan is a employee pension benefit plan, we must figure out exactly what the "Plan" is. And the central difficulty in this case is Plaintiffs' inability to explain what they mean by "Valuebuilder Plan." Although the Complaint repeatedly refers to the "Plan" as if it were a discrete entity, the Complaint never defines the Plan in any detail.

Rather than describing what the Plan *is*, the Complaint describes what the Plan allegedly *does*: "the Plan provides retirement income to employees and results in a deferral of income by employees for a period extending to the termination of covered employment or beyond." But this recital simply parrots ERISA's definition of an employee pension benefit plan. *See* 29 U.S.C. § 1002(2)(A)(i)-(ii). And instead of describing the contours of the Plan, the Complaint alleges who is behind it—namely the NEA and NEAMBC. In short, although the Complaint alleges that the "NEA and NEAMBC communicated extensively with Plan participants regarding the Plan, Plan assets, and Plan benefits, endorsed the Plan, and aggressively marketed and promoted the Plan," it utterly fails to explain *what* the "Valuebuilder Plan" is.

Nevertheless, if there is any interpretation of the term "Valuebuilder Plan" that would render the "Plan" an "employee pension benefit plan," Plaintiffs would have successfully stated a claim capable of surviving a 12(b)(6) motion. Looking at the facts alleged in the Complaint, we conclude that the "Valuebuilder Plan" could refer to three entirely different entities: it could refer to (1) the "Valuebuilder Program"

launched by the NEA to help its members save for retirement, (2) the section 403(b) retirement plans administered by various school districts, or (3) the specific "Valuebuilder" annuities offered by Nationwide and Security Benefit. We address each of these possibilities in turn.

A

**[4]** The first possible interpretation of the Complaint is that the "Valuebuilder Plan" refers to NEA's "ValueBuilder Program." According to its website, "NEA established the NEA Valuebuilder Program to encourage its members to save for retirement." And in their opening brief, Plaintiffs explain that according to "Webster's Third New International Dictionary (1976) . . . 'program' refers somewhat circularly to 'plan,' and is generally defined as a 'plan of procedure: a schedule or a system under which action may be taken toward a desired goal: a proposed project or scheme.' " However, the Valuebuilder Program referenced in the NEA website is not a retirement plan. The "Valuebuilder Program" appears to be the name of a comprehensive marketing campaign launched by the NEA and NEAMBC.[7] This well-executed marketing plan was apparently designed to convince thousands of NEA members to invest in section 403(b) annuities sold by Nationwide and Security Benefit. Pursuant to their agreements with the NEA and NEAMBC, Nationwide and Security Benefit labeled these annuities "Valuebuilder annuities" and marketed

---

[7]The NEA's website defines the program as follows:

NEA established the NEA Valuebuilder Program to encourage its members to save for retirement. [Security Benefit] make[s] available retirement products under the NEA Valuebuilder Program pursuant to an agreement with NEA's wholly-owned subsidiary, [NEAMBC]. Security Benefit pays an annual fee for services to [NEAMBC] under the agreement. NEA and [NEAMBC] are not affiliated with Security Benefit. Neither NEA nor [NEAMBC] is a registered broker/dealer. All securities brokerage services are performed exclusively by your sales representatives broker/dealer and not by NEA or [NEAMBC].

them as part of the "Valuebuilder Program."[8] The NEA, for its part, trademarked the name "Valuebuilder." The NEA apparently intended to establish "Valuebuilder" as a popular brand name with its members. The NEA could then sell this brand to broker/dealers such as Nationwide and Security Benefit. After purchasing the brand from NEA, Nationwide and Security Benefit could sell annuities with names like "The NEA Valuebuilder Variable Annuity" to NEA members.

**[5]** In any event, a marketing plan designed to build brand loyalty is not, under any reasonable definition of the term, a retirement plan. The Valuebuilder Program certainly *promotes* various retirement plans, but the Valuebuilder Program itself does not "provide[ ] retirement income" or "result[ ] in a deferral of income." 29 U.S.C. § 1002(2)(A)(i)-(ii). The Valuebuilder Program is not, therefore, an "employee pension benefit plan." Accordingly, insofar as the "Plan" refers to the NEA's Valuebuilder Program, Plaintiffs fail to state an ERISA claim.

B

**[6]** Given the language of the Complaint, it seems more likely that Plaintiffs used the term "Valuebuilder Plan" to refer to the section 403(b) annuity plans offered by Plaintiffs' school district employers. The Complaint describes the Valuebuilder Plan as an "Internal Revenue Code section 403(b) . . . tax deferred annuity program." The Complaint also states that "[t]he Plan is purported to be a section 403(b) retirement plan." The lengthy discussion in the district court opinion about whether the section 403(b) annuity plans were "govern-

---

[8]The prospectus for the NEA Valuebuilder Variable Annuity explains that the annuity contract "is made available under the NEA Valuebuilder Program pursuant to an agreement between [Security Benefit] and [NEAMBC]." Neither the prospectus nor the NEA's website, however, indicates that the Valuebuilder Program is anything other than the name of NEA's comprehensive marketing plan.

mental plans" indicates that the district court read the "Value-builder Plan" to refer to the school districts' section 403(b) annuity plans. This construction of the term is also more promising for Plaintiffs, since, unlike the "Valuebuilder Program," the school districts' various section 403(b) defined-contribution plans *are* retirement plans. We must determine whether they are employee pension benefit plans subject to ERISA, and whether they were "established or maintained" by an employee organization—i.e., the NEA.

Section 403(b) of the Internal Revenue Code provides employees of public schools, churches, and section 501(c)(3) organizations with the ability to invest in tax-sheltered annuities. 26 U.S.C. § 403(b)(1)(A).[9] Employees make pre-tax contributions toward the purchase of these annuities through salary-reduction agreements, *see id.* § 403(b)(1)(E), but in order to obtain preferential tax treatment for those contributions, the employer must purchase the selected annuities for its employees, *id.* § 403(b)(1)(A)(ii). Employers can also choose to make voluntary contributions to these plans. *See id.* § 403(b)(1); 26 C.F.R. § 1.403(b)-3(a).[10] As with optional

---

[9]Section 403(b) is titled "Taxability of beneficiary under annuity purchased by section 501(c)(3) organization or public school," and provides, in relevant part:

> (1) If
>
>> (A) an annuity contract is purchased —
>>
>>> (i) for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a),
>>>
>>> (ii) for an employee. . .who performs services for an educational organization. . . , by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing, or
>>>
>>> (iii) for [a minister]. . .
>>
>> then contributions and other additions by such employer for such annuity contract shall be excluded from the gross income of the employee for the taxable year. . .

[10]There is nothing in Title I of ERISA that expands the scope or focus of section 403(b) by allowing employee organizations, or any employers other than public school districts, churches, or section 501(c)(3) tax-exempt employers, to establish or maintain section 403(b) plans.

retirement savings plans established by private employers pursuant to 26 U.S.C. § 401(k), each public school district devises its own section 403(b) plan, presenting its employees with a menu of different vendors offering various individual annuity contracts or custodial accounts for the purchase of mutual funds.[11] *See* 26 U.S.C. § 403(b)(1), (7). Each school district determines which vendors and annuity contracts to include in its menu of options, and provides the list of "approved" vendors to its employees.[12] Employees then choose the vendor with whom they want to invest and sign individual annuity contracts with the vendor.

**[7]** However, while a section 403(b) plan is clearly a retirement plan, and would be considered an "employee pension benefit plan" if established or maintained by a 501(c)(3) tax-exempt employer, section 403(b) plans established by school districts are exempted from ERISA by the "governmental plan" exception. 29 U.S.C. § 1003(b)(1). As noted earlier, ERISA defines "governmental plans" as plans "established or maintained for its employees by . . . the government of any State or political subdivision thereof." *Id.* § 1002(32). It is undisputed that public school districts are political subdivisions of the various states and are therefore governmental entities. The only issue is whether the school districts "established or maintained" the plans, thus bringing the plans within the "governmental plan" exception.

---

[11]According to South Kitsap's website, there were six "District Approved Vendors" on the South Kitsap list. The El Dorado school district website indicates that the district made available eighty-six "403b Approved Vendors." Both lists included Nationwide and Security Benefit as approved vendors.

[12]In California, the State Teachers Retirement Board ("STRB") is required to "determine" which investment options may be offered consistent with section 403(b). Cal. Educ. Code § 24950(b)(3). Local school districts are then free to establish their own menu of section 403(b) products that are approved for employees who choose to participate in the plan. *See* 403bCompare (Oct. 12, 2010), https://www.403bCompare.com/Default.aspx (listing section 403(b) vendors approved by the STRB).

Plaintiffs make two separate arguments that the school district employers did not establish or maintain the plans. First, Plaintiffs allege that the school districts did not make any contributions to their annuity accounts, and suggest that the lack of direct governmental funding precludes a finding that their employers' section 403(b) plans are "governmental plans."[13] However, the structure of a section 403(b) plan necessarily implicates governmental action, regardless of the presence of direct governmental funding. The creation of a governmental employer's section 403(b) plan generally begins, as here, with a state law requiring the creation of such plans by a public school district or some other state or local governmental agency. *See* Wash. Rev. Code § 28A.400.250; Cal. Educ. Code § 24950. Even if funded entirely by employee salary reduction contributions, the school district must agree to create the plan, and must set up a system for purchasing the annuities chosen by each employee, making salary deductions to pay for the public school employees' investments in their choice of section 403(b) annuities and transmitting payments to the chosen vendor. *See, e.g.*, Cal. Educ. Code § 24950(b)(5); Wash. Rev. Code § 28A.400.250(2)-(3). Some states require the public school district employer to decide which vendors it wants to include in its plan and to provide this information to its employees. *See* Cal. Educ. Code § 24950(b)(4). A state might also make determinations about how and when the marketing of these products will be allowed. *See* Wash. Rev. Code § 28A.400.250(5). Finally, in some instances the school district employer can terminate the offering of an annuity. *See* Cal. Educ. Code § 24951. The lack of governmental funding, when considered in light of the necessary governmental involvement in establishing and maintaining section 403(b) plans, does not prevent these plans from falling within the "governmental plan" exemption.

---

[13]Plaintiffs allege that all of the money used to purchase the various annuity contracts came from Plaintiffs' deferred salary.

Plaintiffs' second argument is more creative. Plaintiffs contend the school district employers did not "establish or maintain" the section 403(b) plans—and that the plans are therefore not governmental plans—because the plans are exempted from ERISA under a *different* exemption. Specifically, Plaintiffs allege that the section 403(b) plans fall within the safe harbor provided in 29 C.F.R. § 2510.3-2(f), which provides that in certain situations, employer-sponsored section 403(b) plans are not, as a matter of law, "established or maintained" by the employer. *Id.* The district court was persuaded by this argument, and held that the section 403(b) plans were not governmental plans because they fell within the safe harbor.

The safe harbor provision applicable to "employee pension benefit plans," 29 C.F.R. § 2510.3-2, is part of a DOL regulation intended to "clarif[y] the limits of the defined terms 'employee pension benefit plan' and 'pension plan' for purposes of title I of the Act . . . by identifying specific plans, funds and programs which do not constitute employee pension benefit plans for those purposes." *Id*. § 2510.3-2(a). As explained in Part II, an employer that qualifies for the 29 C.F.R. § 2510.3-2(f) safe harbor is considered not to have "established or maintained" an employee pension benefit plan under ERISA. Such a plan would therefore not be considered an "employee pension benefit plan" for purposes of Title I.

**[8]** It is clear, however, from the DOL's regulations and opinions that the regulatory safe harbor for "employee pension benefit plans" was designed for only one subset of tax-exempt employers: namely, *private* tax-exempt employers organized pursuant to 26 U.S.C. § 501(c)(3)—other than churches—that would otherwise be subject to the requirements of Title I. It was never intended to apply to section 403(b) plans provided by public school districts, which are "governmental plans" and, thus, already exempt from Title I of ERISA. For example, the preamble to 29 C.F.R. § 2510.3-2(f) provides that "[c]ertain 'governmental plans' defined in

section 3(32) of the Act, and 'church plans' defined in section 3(33) of the Act *are not affected by the [safe harbor] regulation* because they are excepted from the requirements of Title I of the Act by virtue of section 4(b)(1) and (2) of the Act." Definitions and Coverage Under the Employee Retirement Income Security Act of 1974, 44 Fed. Reg. 23525, 23525 n.1 (April 20, 1979) (emphasis added). Importantly, this DOL interpretation of its own regulation is afforded even more deference than that which courts normally give agency interpretations of statutes. *See Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Kraus v. Presidio Trust Facilities Div. / Residential Mgmt. Branch*, 572 F.3d 1039, 1045 (9th Cir. 2009).[14]

The IRS came to the same conclusion in 2007, after consulting with the DOL on the interaction between Title I of ERISA and section 403(b) of the IRC. *See* Revised Regulations Concerning Section 403(b) Tax-Sheltered Annuity Contracts, 72 Fed. Reg. 41128, 41136 (July 26, 2007). The consultation "focused on whether the requirements imposed on employers in these regulations would exceed the scope of the Department of Labor's safe harbor regulation at 29 C.F.R. 2510.3-2(f) and result in all section 403(b) programs sponsored by tax-exempt employers (*other than governmental plans and certain church plans*) falling under the purview of ERISA." *Id.* (emphasis added);[15] *see also Montoya v. ING Life*

---

[14]DOL Field Assistance Bulletin No. 2009-02 states that "[u]nder ERISA § 4(b)(1) and (2), 'governmental plans' and 'church plans' generally are excluded from coverage under Title I of ERISA." DOL Field Assistance Bulletin No. 2007-02 makes a similar point: "§ 403(b) contracts and custodial accounts purchased or provided under a program that is [ ] a 'governmental plan' under § 3(32) of ERISA . . . are not subject to Title I."

[15]The preamble to the released section 403(b) regulations explains that "[t]he [DOL] promulgated a regulation in 1975, 29 C.F.R. § 2510.3-2(f),

*Ins. and Annuity Co.*, 653 F. Supp. 2d 344, 348-50 (S.D.N.Y. 2009) (holding that the DOL's safe harbor provided in 29 C.F.R. § 2510.3-2(f) does not apply to "governmental plans").

**[9]** Plaintiffs cite a Seventh Circuit opinion, *Otto v. Variable Annuity Life Insurance Co.*, 814 F.2d 1127, 1135 (7th Cir. 1986), as support for their position that the safe harbor should apply to the school districts' section 403(b) plans. In *Otto*, the court held that a certain plan was not a "governmental plan" because it fell within the section 2510.3-2(f) safe harbor. In the DOL's invited brief, the Secretary argues that *Otto* (and the district court in this case) put the cart before the horse. The Secretary contends that a court should *first* determine whether a plan is a governmental plan, and that it should only proceed to apply the safe harbor if it concludes that a plan is *not* a governmental plan. We agree with the Secretary's reasoning: only private section 501(c)(3) employers require the additional protection of the regulatory safe harbor, because governmental and church plans already enjoy separate and specific *statutory* exemptions from ERISA. *See* 29 U.S.C. §§ 1002(32), (33); *id*. §§ 1003(b)(1), (2). The Secretary also suggests that the *Otto* court's error was harmless because the result in that case would have been the same whether the court relied on the "safe harbor" or on the "governmental plan" exemption; under either exemption, the plan in that case was not "established or maintained" by the government employer. Therefore, we conclude that the school districts' section 403(b) annuity plans are "governmental plans" exempt from Title I." Accordingly, insofar as the "Plan" refers to the school districts' section 403(b) annuity plans, Plaintiffs fail to state a claim upon which relief can be granted.

describing circumstances under which an employer's program for the purchase of section 403(b) contracts for its employees, *which is not otherwise excluded from coverage under Title I*, will not be considered to constitute the establishment or maintenance of an 'employee pension benefit plan' under Title I of ERISA." 72 Fed. Reg. at 41136-37.

C

**[10]** Finally, the "Valuebuilder Plan" could be construed as referring to the individual Valuebuilder annuities offered by Nationwide and Security Benefit. According to the district court's dismissal order, Plaintiffs claimed that "*the annuity contracts* are employee pension benefit *plans* within the meaning of ERISA, and that they were established or maintained by the NEA, an employee organization." The district court agreed with Plaintiffs' first contention—that the annuities were "plans" within the meaning of ERISA—but ultimately held that the annuities were not "established or maintained" by the NEA.[16] We agree that the Valuebuilder annuities were not "established or maintained" by the NEA, and that they are not therefore "employee pension benefit plans" subject to ERISA.

**[11]** It is clear from the NEA's website and the prospectuses offered by Nationwide and Security Benefit that these annuities were not established or maintained by either Plaintiffs' school district employers or by the NEA. The NEA's website explains that the "NEA Valuebuilder Variable Annuity is a flexible purchase payment deferred variable annuity *issued by* Security Benefit Life Insurance Company and *distributed by* Security Distributors, Inc." The NEA's website directed teachers to "obtain a prospectus from Security Dis-

---

[16]The district court held that "the annuities promoted by the NEA and offered uniformly to the school district employees are a 'program' designed for th[e] purpose [of providing retirement income], and would be seen as such by a reasonable employee." By describing the annuities as *a program*, it seems the district court considered the Valuebuilder annuities, when taken together, to constitute a single "program." However, the Valuebuilder annuities were discrete investment contracts that were sold to individual employees by two separate insurance companies pursuant to various school districts' section 403(b) plans. Even though the NEA marketed these annuities as part of its "Valuebuilder Program," the individual annuities themselves do not constitute a single program. Our focus, at this stage, is whether each *individual* annuity constitutes an ERISA plan.

tributors, Inc." before investing. The prospectus for the NEA Valuebuilder Variable Annuity explained that "[n]either the NEA nor NEAMBC is registered as a broker-dealer and does not distribute the Contract or provide securities brokerage services." We are therefore satisfied that the NEA, which is not even registered to sell securities, did not "establish or maintain" the annuity contracts in question.[17] These annuity contracts cannot, therefore, be "employee pension benefit plans" covered by ERISA. Insofar as Plaintiffs used the term "Valuebuilder Plan" to refer to these individual section 403(b) annuities, they have failed to state an ERISA claim.

V

[12] Plaintiffs argue in their opening brief that the district court's dismissal order "shelters the Defendants' improper activity" However, the district court merely held that the Defendants' activity was not subject to ERISA. Plaintiffs have only themselves to blame for trying to fit the square peg of Defendants' alleged misconduct into the round hole of an ERISA suit. The annuities at issue in this case are not regulated by ERISA, but by the securities laws. And the companies issuing these securities are regulated by the Securities and Exchange Commission ("SEC") and various state insurance regulators, not the Department of Labor. Variable annuities are investment contracts that are considered "securities" within the meaning of the Securities Act of 1933.[18] *See* 15

---

[17]The fact that Nationwide and Security Benefit paid NEA for the use of NEA's trademark, "Valuebuilder," is irrelevant. The situation can be analogized to the well-known phenomenon of celebrity endorsements. If Security Benefit paid Hall-of-Fame quarterback Joe Montana for the use of his name—perhaps hoping to sell an annuity contract to wealthy Notre Dame alumni—the resulting "Joe Montana Variable Annuity" would still be established or maintained by Security Benefit, not Joe Montana. Even if Joe Montana starred in television commercials endorsing the annuity, it would make little sense to say that Joe Montana, who might know nothing about the contract's details, established or maintained it.

[18]Section 2(1) of the Securities Act provides: "When used in this subchapter, unless the context otherwise requires—[t]he term 'security' means any note, stock, . . . or . . . *investment contract*." 15 U.S.C. § 77b(a)(1).

U.S.C. § 77b(a)(1); *see also SEC v. Variable Annuity Life Ins. Co.*, 359 U.S. 65, 71-73 (1959) (holding that variable annuities are securities that may be regulated by the SEC). Accordingly, Security Benefit filed the NEA Valuebuilder Variable Annuity prospectus with the SEC. The sale of securities is subject to the anti-fraud provisions of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R § 240.10b-5 (2009). Furthermore, NEAMBC is registered as an investment adviser with the SEC. *See* 15 U.S.C. § 80b-3.[19] As such, NEAMBC is subject to all the requirements of the Investment Advisor Act. *Id.* § 80b-1 *et seq.* The mere fact that Defendants are not subject to ERISA's fiduciary duty and reporting requirements does not mean that the *district court's decision* sheltered Defendants' alleged activity. Rather, by choosing to sue under ERISA, it is Plaintiffs who have simply pled themselves out of court.

## VI

**[13]** Plaintiffs allege that the NEA, an employee organization, "established and maintained" the "Valuebuilder Plan." Viewing the Complaint in the light most favorable to the Plaintiffs, we are satisfied that there is no scenario in which this "Plan" fits the definition of an employee pension benefit plan subject to Title I of ERISA. Plaintiffs therefore fail to state an ERISA claim. The judgment of the district court is

**AFFIRMED**.

---

[19]The prospectus states that NEAMBC:

promotes the NEA Valuebuilder Program to employers of NEA members and to NEA members and provides certain services in connection with the NEA Valuebuilder Program (e.g., evaluating the effectiveness of the NEA Valuebuilder Program, monitoring the satisfaction of NEA members with the NEA Valuebuilder Program, conducting quality assurance work, and providing feedback concerning customer satisfaction with the NEA Valuebuilder Program).