Elizabeth WILSON, Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, et al.,**
Defendants.

Case No. C14–1479RSL.

United States District Court,
W.D. Washington,
at Seattle.

Signed April 29, 2015.

Kathryn M. Knudsen, William Candler Smart, Ian S. Birk, Keller Rohrback, Seattle, WA, for Plaintiff.

D. Michael Reilly, Gabriel Baker, Lane Powell PC, Lance M. Andree, Porter Foster Rorick, for Defendants.

## ORDER DENYING MOTION TO REMAND

ROBERT S. LASNIK, District Judge.

This matter comes before the Court on "Plaintiff's Motion to Remand." Dkt. # 13. Having reviewed the memoranda and exhibits submitted by the parties, the Court finds as follows.

## I. BACKGROUND

Mary VanderVelde was a middle school teacher with the Oak Harbor School District ("School District" or "District") who left work due to progressive liver disease in October 2012 and died in June 2013. Dkt. # 1–1 (Summons & Compl.) ¶¶ 2.1–2.9. Ms. VanderVelde had life insurance coverage through her employment with

the School District, provided by defendant Provident Life and Accident Insurance Company ("Provident"); her policy was administered by defendant Unum Group dba Unum Group Corporation ("Unum"). Plaintiff is personal representative of Ms. VanderVelde's estate. *Id.* ¶ 1.1. Defendant insurers' denial of plaintiff's insurance claim ultimately led to plaintiff filing an action against these defendants and the District in state court in August 2014 for breach of contract, negligence, misrepresentation, and violations of Washington state law. *Id.* ¶¶ 4.1–4.10.1.

Defendants removed this action in September 2014, asserting that this Court had federal question jurisdiction because Ms. VanderVelde's life insurance policy was part of an "employee benefit plan" falling under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Dkt. # 1 (Notice of Removal) at 2. Because this plan was covered by ERISA, defendants argue, plaintiff's claims fall under the Act's civil enforcement provisions and are preempted by the Act, justifying removal. *Id.* at 3–4. Plaintiff seeks remand on the grounds that the plan incorporating the decedent's policy falls under the "governmental plan" exception to ERISA. Dkt. # 13 at 5.

Defendants' basic argument is as follows. The benefit plan at issue is the "Washington Education Association Group Plan W–138 Plan 11" ("Group Plan" or "Plan"), a group insurance plan underwritten by Provident and "established and maintained" by the Washington Education Association ("WEA"). Dkt. # 20 at 1–2. The WEA is a union of Washington public school employees and an affiliate of the National Education Association ("NEA"), *id.*, making it an "employee organization" for ERISA purposes, *id.* at 5. Provident issued the Plan to the WEA, and the Plan covers (a) employees of the WEA and its affiliates and (b) employees of Washington

public school districts that elect to participate in the Plan. *Id.* at 2; Dkt. # 4–1 at 5 (Group Plan Booklet). Because the WEA is an employee organization, the benefit plans it establishes and maintains are covered by ERISA. *Id.* at 5. Defendants emphasize that the District's involvement with the Group Plan is minimal and that the Plan is not exclusively funded by the District. *Id.* at 3.

Plaintiff's argument in turn is that (a) the District offered a comprehensive benefits plan to its employees; (b) this plan included the life insurance option offered by the WEA, pursuant to a collective bargaining agreement between the District and its employees' local bargaining unit; (c) this plan was therefore a "governmental plan" for ERISA purposes (making it exempt from ERISA); and (d) Ms. VanderVelde's life insurance policy, in which she enrolled through the District's benefits plan, was therefore part of an ERISA-exempt plan. Dkt. # 13.

## II. LEGAL STANDARD

■ Defendants may remove any action filed in state court over which federal district courts have original jurisdiction. 28 U.S.C. § 1441(a). The Court must remand a case to state court when the Court finds that it lacks subject matter jurisdiction over the claims asserted. 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction falls on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction, *Cal. ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 (9th Cir.2004); remand must be granted if there is any doubt as to the removability of a case, *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). Subject matter jurisdiction is established (1) where there is diversity of citizenship under 28 U.S.C. § 1332; or (2) where a claim arises under federal law pursuant to 28 U.S.C. § 1331.

Plaintiff's only challenge to removal jurisdiction is that the decedent's life insurance was part of a "governmental plan" exempt from ERISA coverage. Plaintiff has not disputed that ERISA otherwise gives this Court removal jurisdiction over this action.

## III. DISCUSSION

### (a) Employee Welfare Benefit Plans and Governmental Plans Under ERISA

■ ERISA was enacted to protect, inter alia, "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). "Employee benefit plans" are either "employee welfare benefit plans" or "employee pension benefit plans," or both. *Massachusetts v. Morash*, 490 U.S. 107, 109, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). An employee welfare benefit plan, which is at issue here, is defined as:

> any plan, fund, or program which ... is ... established or maintained by an employer or by an employee organization, or by both ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). Exempt from ERISA's broad coverage are "governmental plans." A governmental plan is defined in relevant part as "a plan established or maintained for its employees ... by the government of any State or political subdivision thereof." 29 U.S.C. § 1002(32). All such plans are exempt from ERISA coverage. 29 U.S.C. § 1003(b)(1). While Congress enacted ERISA primarily to curb abuses in the administration of private pension systems; governmental plans were exempted due to concerns of federalism. *Roy v. Teachers Ins. & Annuity Ass'n*, 878 F.2d 47, 49 (2d Cir.1989); *Feinstein v. Lewis*, 477 F.Supp. 1256, 1261 (S.D.N.Y.1979), *aff'd*, 622 F.2d 573 (2d Cir. 1980).[1] It is undisputed that the WEA is an "employee organization" for ERISA purposes and that the Oak Harbor School District is a political subdivision of the Washington state government. What is in dispute is whether the plan under analysis is an ERISA plan subject to the governmental plan exemption.

### (b) Evidentiary Issues

■ Defendants propose that the WEA participates in funding the Group Plan, noting that a brochure for the Plan (identifying the Plan as WEA-sponsored) advertises a "50% Rate Subsidy." Dkt. # 4–1 at 44. The Court finds this evidence insufficient to establish that the advertised subsidy was provided by the WEA (as opposed to the School District or Washington state, for example), or that the WEA in any way directly funded the Plan.[2]

---

**1.** As discussed further *infra*, a governmental plan may be established where a government entity buys insurance from a private company, *Silvera v. Mut. Life Ins. Co. of NY*, 884 F.2d 423, 426 (9th Cir.1989); or where a plan is created pursuant to collective bargaining between a government entity and a union, *Feinstein*, 477 F.Supp. at 1261; however, when an employee organization buys private insurance for its members, who happen to be public employees, this by itself is simply the establishment of an ERISA-covered employee benefit plan, *see Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 992 (1996).

**2.** While the parties dispute the source of this brochure, it appears to have been provided by school districts to their employees. Dkt. # 22 at 2 n. 1. Furthermore, by comparing the brochure to an email provided by plaintiff's witness Philip W. Becker, Dkt. # 14–1 at 77 (describing the Group Plan), the Court concludes that this brochure describes the Group Plan in this case. Dkt. # 14–1 at 77 (Becker Email). In any event, while it is clear to the

Plaintiff relies heavily on the declaration of Philip W. Becker, a former WEA employee who worked for 15 years with a WEA division representing Washington teachers, faculty, and support staff in public schools and technical colleges in several counties. Dkt. # 14 ¶ 2. The WEA program of which Becker was a part provides assistance to local associations to help with collective bargaining, among other matters. *Id.* Becker claims to have "general familiarity with the collective bargaining process that occurs between Washington school districts and public school teachers and staff, including the establishment of benefits programs for Washington teachers." *Id.* ¶ 3. Becker does not claim firsthand knowledge of how the Group Plan came into being or how the Oak County School District came to participate in it.

According to Becker, Washington school districts have the option to offer various benefit programs to their teachers, including benefit options offered through the WEA. *Id.* ¶¶ 5–6. Becker states that the specific benefit options a particular school district will make available is a function of contract negotiation between that school district and its local bargaining unit, a process in which the WEA is not involved. *Id.* Becker further states that the benefits offered by the Oak Harbor School District (namely the insurance in question) "are funded through funding pools made up of state, district, and individual employee contributions," and that "[t]he WEA does not fund benefits." *Id.* ¶ 9.

Plaintiff submits the 2013–2016 Negotiated Agreement between the Oak Harbor School District and the Oak Harbor Education Association ("OHEA") (which Becker cites and identifies as the local bargaining unit for the District, *id.* ¶¶ 6–7). This

Agreement provides that the District and the OHEA "will jointly make decisions affecting fringe benefits." Dkt. # 14–1 at 32 (§ 6.8). The Agreement also states that pooled funds "may be used" to purchase "National Insurance Company Life Insurance, WEA endorsed," *id.* (§ 6.8.2.3), further suggesting that the District offered the life insurance in question as the result of collective bargaining.

 Despite Becker's apparent lack of personal knowledge regarding the Group Plan, the negotiations that led to its creation and the bargaining that led to the Negotiated Agreement, the Court finds Becker competent to testify that Washington school districts offer benefits (including WEA benefits) pursuant to collective bargaining; that these benefits are funded through the aforementioned "pooled funds;" and that the WEA does not pay for District employees' benefits. Becker's knowledge of these matters clearly stems from his professional experience. Furthermore, the language of the Agreement supports Becker's claim that the District only offered the Group Plan to its employees pursuant to collective bargaining. The Court denies defendants' motion to strike Becker's declaration in its entirety. Nevertheless, the Court disregards Becker's statement that "[o]nly the benefits that are established and maintained by the district are included in its Benefits Fair brochure." *Id.* ¶ 8. Whether a plan was "established and maintained" by the District is a legal conclusion that the Court must make.[3]

### (c) The Plan At Issue

The central issue on this motion is whether Mary VanderVelde was enrolled in a "governmental plan." However, the

---

Court that the WEA authored or approved the information in the brochure, the Court will not infer that the WEA provided the advertised subsidy.

**3.** Plaintiff additionally cites the fact that a claims manager listed the Plan as "non-ERISA." Dkt. # 15–1 at 41 (Birk Decl. Exh. K). The Court does not find this conclusive.

parties appear to disagree about what should be considered "the plan" under examination. Defendants argue that the Court should analyze the Group Plan entered-into by the WEA, Dkt. # 20 at 1–2; plaintiff suggests that the Oak Harbor School District offered a benefit plan to teachers when it gave them a list of optional benefits (as a result of collective bargaining) that included the option to enroll in the WEA Group Plan, and that this is the plan that the Court should examine, Dkt. # 13 at 6–8. A question presented is whether the School District's decision to offer the Group Plan along with other benefits created a separate and distinct plan subject to its own ERISA-exemption analysis.

The Court has found no clear and direct support for this proposition. It is true that ERISA broadly-defines "plan," and Congress may have intended for a broad definition of "establish." *Gualandi v. Adams*, 385 F.3d 236, 243 (2d Cir. 2004). However, Oak Harbor School District employees enrolled in a Group Plan that covered employees from multiple school districts and from the WEA and was governed by the terms of the WEA's contract with Provident. Assuming (as the Court herein finds) that the Group Plan falls under ERISA, the Court fails to see how the School District's decision to opt-in to this Group Plan and offer it to its employees created a new plan inside this Plan covering only Oak Harbor employees but governed by the Group Plan's terms.[4] Thus, the Court finds that the plan at issue is the Group Plan.[5]

**(d) Group Plan ERISA Status Absent Exemption**

■ Plaintiff argues that defendants have not proven that the WEA established the plan at issue, emphasizing the lack of evidence that the WEA provided any funding for the plan. Dkt. # 22 at 2. The Court nevertheless finds sufficient evidence that the Group Plan falls under ERISA assuming that the governmental exception does not apply.

The record suggests that the WEA was responsible for creating the Group Plan; the Plan's booklet states that Provident issued "Group Policy No. W–138" to the WEA, which is identified as the policyholder. Dkt. # 4–1 at 5 (Group Plan Booklet). Furthermore, the Plan does not fall under 29 C.F.R. § 2510.3–1(j), the regulatory safe harbor exempting certain group insurance plans from ERISA coverage. The Ninth Circuit has held that failure to satisfy any of the safe harbor's four requirements will subject an otherwise-qualified group insurance plan to ERISA. *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir.2000). Thus, such plans are ERISA plans where they are "endorsed" by an employer or employee

---

**4.** Other courts have held that a private plan does not become a public plan merely through a public employer's participation. *See S. Cent. Indiana Sch. Trust v. Poyner*, 2007 WL 3102149, at *5 (S.D.Ind. Oct. 19, 2007) (plan was non-governmental where it was founded by both public and private employers to benefit their respective employees).

**5.** Plaintiff cites *Daniels–Hall v. Nat. Educ. Ass'n*, 629 F.3d 992 (9th Cir.2010). In *Daniels–Hall*, the NEA designed, endorsed and marketed annuities to its members, including a Washington school district that in turn of-fered the NEA-endorsed annuities to its employees through the district's "annuity plans." *Id.* at 996, 1002–05. The court held that the school district's plans were governmental plans. *Id.* While this could suggest that an employer's benefits plan may consist of options to join other entities' plans, the court held that the NEA-endorsed annuities were not themselves ERISA-covered benefit plans but were instead securities. *Id.* at 1006. Thus, *Daniels–Hall* did not reach the question of whether an employer may establish an ERISA-exempt plan by allowing employees to opt-into a non-exempt plan.

organization. *See Pierson v. Cont'l Cas. Co.*, 2000 WL 1879895, at *8 (C.D.Cal. Dec. 8, 2000) (interpreting 29 C.F.R. § 2510.3–1(j)(3)). However, an entity must be more than a "mere advertiser" of a plan to endorse it. *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). Courts have found evidence of endorsement where an entity promotes a plan as having its approval or has the power to modify its terms. *See Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 917 (9th Cir.1997) (29 C.F.R. § 2510.3–1(j)(3) not satisfied where organization promoted a plan to its members); *Pierson*, 2000 WL 1879895, at *8 (promoting a plan as union-approved evidenced endorsement); *LaPrease v. Unum Life Ins. Co. of Am.*, 347 F.Supp.2d 944, 950 (W.D.Wash.2004) (endorsement found partly because employer was identified as the plan administrator and had the power, "in its sole discretion, to amend, modify or terminate the Plan[.]").

The WEA has the power to amend, modify or terminate the Group Plan at any time. Dkt. # 4–1 at 9. Furthermore, a brochure advertising the Plan carried the WEA's logo, presented the Plan as a "WEA Select Voluntary Term Life and AD & D" plan and listed the WEA as the plan's "sponsor." Dkt. # 4–1 at 44. The Court finds that the WEA's level of control and demonstration of ownership over the Plan suffices to make it more than a mere advertiser. Thus, the Group Plan is subject to ERISA unless it falls under the governmental plan exception.

**(e) Governmental Plan Exception**

▮ The Court finds that the Group Plan is not a governmental plan. Plaintiff has provided competent evidence that the District offered the Group Plan to its employees pursuant to a collective bargaining agreement with the OHEA; and as plaintiff correctly points out, there is ample

authority for the proposition that plans and programs established or maintained pursuant to collective bargaining agreements between unions and government entities may constitute governmental plans. However, the Group Plan was not the product of collective bargaining, but the result of a separate negotiation between the WEA and Provident; the District merely "elected" to participate in the Plan. Where unions of public employees enter insurance agreements that are not a result of collective bargaining, the plans may be found to be nongovernmental. *See, e.g., Peterson v. Am. Fidelity Assurance Co.*, 2013 WL 6047183, at * 4 (D.Nev. Nov. 13, 2013); *Pierson*, 2000 WL 1879895, at *10.

Because the Plan was apparently created without direct government involvement, the question becomes whether the Plan may be considered government-established for some other reason, i.e., because it receives public funding. *See Silvera*, 884 F.2d at 426 (city established governmental plan where it purchased and paid the premiums on a group insurance plan designed, set up, administered and offered by private insurance company); *see also Gualandi*, 385 F.3d at 243 (school district established plan set up by union and insurer by providing exclusive funding for it). Despite the evidence of public funding, defendants point to the contributions made by school district employees, the Plan's coverage of WEA employees (who presumably also made contributions), and the District's "limited" involvement in the Plan as evidence that the Plan is non-governmental. Plaintiff contends that the District established and maintained the Plan by permitting employees to participate in the Plan and facilitating the employment of Plan premiums via payroll deductions. Dkt. # 22 at 1–2.

DOL guidance suggests that the factors identified by defendants do not individually

preclude a finding that the Group Plan is a governmental plan. DOL letters advise that plans established pursuant to collective bargaining agreements may be governmental plans where only a "de minimis" number of private sector employees are covered, Dep't of Labor ERISA Op. Letter No. 2004–01A, 2004 WL 322573, at *3 (Jan. 27, 2004); and that plans administered by "employee organizations" may be considered governmental where the organizations' members are solely government employees and the plan is funded exclusively by the government and by these employees, Dep't of Labor ERISA Op. Letter No. 99–15A, 1999 WL 1252003, at *6 (Nov. 19, 1999). While the letters are not precedent or squarely on point, the Court may rely on them to the extent that it finds them persuasive.

Furthermore, the record on whole shows the plan's dependence on government involvement. It is clear from the evidence that the Plan anticipated and relied on school district participation; without this, the Plan would not have covered the government employees it was designed to cover and may not have been sustained by government (and government-employee) contributions. By the Plan's terms, it would cover public employees only if their government employers elected to participate.

Nevertheless, the Plan was independently created by the WEA for the benefit of its employees along with government employees, and the evidence does not suggest that school districts (including plaintiff's district) played any direct role in the Plan's creation. Those facts put together prove dispositive, consistent with cases finding that private plans do not become public plans merely through the participation of public employers. *See S. Cent. Indiana Sch. Trust v. Poyner*, 2007 WL 3102149, at *5 (S.D.Ind. Oct. 19, 2007); *Kendall v. Standard Ins. Co.*, 17

F.Supp.2d 1128, 1133 (E.D.Cal.1998) (plan was non-governmental where it was issued to an association consisting of public and private employers) ("[I]f a public entity chooses to participate in a ERISA plan that includes private employers, that public entity's plan becomes subject to the provisions of ERISA."). While this case is unlike *Sarraf*, where a union purchased a plan to benefit its members and the government played no apparent role in the plan, 102 F.3d at 992; it is also unlike *Silvera*, where the government purchased insurance directly from a private company, 884 F.2d at 426. Even *Daniels–Hall* and *Gualandi* did not consider the present situation, where a union created an ERISA plan that covered its own employees (who presumably pay their own contributions). Despite the flexibility shown by the Ninth Circuit, other courts and the DOL in finding plans covering government employees to be governmental plans, the Court finds insufficient evidence and precedent to support the finding that such a Plan may be considered "established" or "maintained" by a government entity based on the school districts' participation in the Plan after it had already been established by a union.

## IV. CONCLUSION

For all of the foregoing reasons, the Court DENIES plaintiff's motion to remand. Dkt. # 13.