**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMANDA SATERIALE; JEFFREY
FEINMAN; PAMELA BURNS; DONALD
WILSON; PATRICK GRIFFITHS; JACKIE
WARREN; HEATHER POLESE;
RICHARD HOLTER; DAN POLESE;
FRED JAVAHERI, Individually and
on Behalf of All Others Similarly
Situated,

       *Plaintiffs-Appellants,*

       v.

R.J. REYNOLDS TOBACCO COMPANY,
       *Defendant-Appellee.*

No. 11-55057

D.C. No.
2:09-cv-08394-
CAS-SS

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
PETITION FOR
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
May 7, 2012—Pasadena, California

Filed July 13, 2012
Amended October 15, 2012

12285

Before: John T. Noonan, Jr., and Raymond C. Fisher,
Circuit Judges, and Kimberly J. Mueller, District Judge.*

Opinion by Judge Fisher

---

*The Honorable Kimberly J. Mueller, United States District Judge for
the Eastern District of California, sitting by designation.

## COUNSEL

Jeffrey H. Squire (argued), Lawrence P. Eagel and Raymond A. Bragar, Bragar Wexler Eagel & Squire, P.C., New York, New York; Lionel Z. Glancy and Marc L. Godino, Glancy Binkow & Goldberg LLP, Los Angeles, California, for the plaintiffs-appellants.

Marc K. Callahan, John A. Vogt (argued) and Corbett H. Williams, Jones Day, Irvine, California, for the defendant-appellee.

## ORDER

The opinion filed July 13, 2012, and reported at 687 F.3d 1132, is amended as follows:

At slip opinion page 8097, 687 F.3d at 1143, after the sentence <The presence of discretion thus does not preclude the existence of an offer.>, insert the following new footnote:

<In its petition for rehearing, RJR argues that the plaintiffs have asserted only a bilateral contract and not a unilateral contract. There is no question, however, that the plaintiffs — in their complaint, as well as in the district court and on appeal — have consistently alleged acceptance by performance, which is the essence of a unilateral contract. *See* Appellants' Opening Brief at 14, 19, 22, 26, 30 n.2 (asserting that the plaintiffs accepted RJR's offer by filling out applications, enrolling in the program, buying cigarettes, acquiring and saving C-Notes and complying with the program's terms and conditions). RJR thus had fair notice of the plaintiffs' theory that contractual liability arose from these acts of performance, and the issue was fairly presented to this court. We focus on the substance of the plaintiffs' claims, not the plaintiffs' labels. *See* Farnsworth § 3.4, at 112 (explaining that "[t]he dichotomy between bilateral and unilateral plays a less important role in the contemporary analysis of contracts" and noting that the "Restatement Second abandons the use of the terms because of 'doubt as to the utility of the distinction' " (quoting Reporter's Note to Rest. § 1)).>

With this amendment, the panel has voted to deny the petition for rehearing. Judge Fisher has voted to deny the petition for rehearing en banc and Judges Noonan and Mueller so recommend.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellee's petition for rehearing and petition for rehearing en banc, filed August 22, 2012, is **DENIED**.

No future petitions for rehearing or rehearing en banc will be entertained.

---

## OPINION

FISHER, Circuit Judge:

R.J. Reynolds Tobacco Company (RJR) operated a customer rewards program, called Camel Cash, from 1991 to 2007. Under the terms of the program, RJR urged consumers to purchase Camel cigarettes, to save Camel Cash certificates included in packages of Camel cigarettes, to enroll in the program and, ultimately, to redeem their certificates for merchandise featured in catalogs distributed by RJR. The plaintiffs allege that, in reliance on RJR's actions, they purchased Camel cigarettes, enrolled in the program and saved their certificates for future redemption. They allege that in 2006 RJR abruptly ceased accepting certificates for redemption, making the plaintiffs' unredeemed certificates worthless. The plaintiffs brought this action for breach of contract, promissory estoppel and violation of two California consumer protection laws. The district court dismissed the action for failure to state a claim. We affirm in part, reverse in part and remand. We hold that the plaintiffs have adequately alleged claims for breach of contract and promissory estoppel, but affirm dismissal of the plaintiffs' claims under the Unfair Competition Law and the Consumer Legal Remedies Act.

## I.  BACKGROUND

The plaintiffs appeal from a dismissal for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For purposes of a motion to dismiss, we accept all well-pleaded allegations of material

fact as true and construe them in the light most favorable to the nonmoving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). We thus recite the facts as they appear in the plaintiffs' third amended complaint. This factual background is based on the *allegations* of the plaintiffs' complaint. Whether the plaintiffs' allegations are true has not been decided.

RJR initiated the Camel Cash customer loyalty program in 1991. Compl. ¶ 24. RJR represented on Camel Cash certificates, packages of Camel cigarettes and in the media that customers who saved the certificates — called C-Notes — could exchange them for merchandise according to terms provided in a catalog. *Id.* The C-Notes stated:

> USE THIS NEW C-NOTE AND THE C-NOTES YOU'VE BEEN SAVING TO GET THE BEST GOODS CAMEL HAS TO OFFER. CALL 1-800-CAMEL CASH (1800-266-3522) for a free catalog. Offer restricted to smokers 21 years of age or older. Value 1/1000 of 1¢. Offer good only in the USA, and void where restricted or prohibited by law. Check catalog for expiration date. Limit 5 requests for a catalog per household.

*Id.* ¶ 26. According to the complaint, "Certain (but not all) of the Camel Cash catalogs state[d] that Reynolds could terminate the Camel Cash program without notice." *Id.* ¶ 32.

The plaintiffs are 10 individuals who joined the Camel Cash program by purchasing RJR's products and filling out and submitting signed registration forms to RJR. *Id.* ¶¶ 27, 48. RJR sent each plaintiff a unique enrollment number that was used in communications between the parties. *Id.* ¶ 27. These communications included catalogs RJR distributed to the plaintiffs containing merchandise that could be obtained by redeeming Camel Cash certificates. *Id.*

From time to time, RJR issued a new catalog with merchandise offered in exchange for Camel Cash, either upon request, or by mailing catalogs to consumers enrolled in the program. *Id.* ¶ 28. The number of Camel Cash certificates needed to obtain merchandise varied from as little as 100 to many thousands. *Id.* ¶ 29. This encouraged consumers to buy more packages of cigarettes together with Camel Cash and also to save or obtain Camel Cash certificates to redeem them for more valuable items. *Id.*

RJR honored the program from 1991 to 2006, and during that time Camel's share of the cigarette market nearly doubled, from approximately 4 percent to more than 7 percent. *Id.* ¶¶ 3, 34. In October 2006, however, RJR mailed a notice to program members announcing that the program would terminate as of March 31, 2007. *Id.* ¶ 32. The termination notice stated:

> As a loyal Camel smoker, we [sic] wanted to tell you our Camel Cash program is expiring. C-Notes will no longer be included on packs, which means whatever Camel Cash you have is among the last of its kind.
>
> Now this isn't happening overnight — there'll be plenty of time to redeem your C-Notes before the program ends. In fact, you'll have from OCTOBER '06 though MARCH '07 to go to camelsmokes.com to redeem your C-Notes. Supplies will be limited, so it won't hurt to get there before the rush.

*Id.* ¶ 33 & ex. A.

The announcement advised members that they could continue to redeem their C-Notes until March 2007. Beginning in October 2006, however, RJR allegedly stopped printing and issuing catalogs and told consumers that it did not have any merchandise available for redemption. *Id.* ¶¶ 34, 48. Several

of the plaintiffs attempted, without success, to redeem C-Notes or obtain a catalog during the final six months of the program. *Id.* ¶ 49. The plaintiffs had saved hundreds or thousands of Camel Cash certificates that they were unable to redeem. *Id.* ¶ 11.

In November 2009, the plaintiffs filed a class action complaint against RJR. They allege breach of contract, promissory estoppel and violations of two California consumer protection laws, the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.* The district court dismissed the action under Rule 12(b)(6), and the plaintiffs timely appealed.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's order granting a Rule 12(b)(6) motion to dismiss. *See Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted)). "We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall*, 629 F.3d at 998. The parties agree that the plaintiffs' claims are governed by California law.

## III.   BREACH OF CONTRACT

We begin by addressing whether the plaintiffs have stated a claim for breach of contract. The plaintiffs do not dispute that RJR had the right to terminate the Camel Cash program effective March 31, 2007, but allege that RJR breached a contract by refusing to redeem C-Notes during the six months

preceding program termination. Compl. ¶¶ 6-7. RJR challenges the plaintiffs' contract claim on four grounds: the absence of an offer, indefiniteness, lack of mutuality of obligation (premised on RJR's right to terminate its contractual obligations) and untimeliness. We address RJR's contentions in turn.

## A.    Existence of an Offer

**[1]** "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001) (quoting *City of Moorpark v. Moorpark Unified Sch. Dist.*, 819 P.2d 854, 860 (Cal. 1991)) (internal quotation marks omitted). "The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances." *Id.* "[T]he pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Id.* The issue here is whether the C-Notes, read in isolation or in combination with the catalogs, may have constituted an offer.

### 1.    *Bilateral Contract*

**[2]** As an initial matter, we are not persuaded that the plaintiffs have alleged the existence of an offer to enter into a *bilateral* contract. "A bilateral contract consists of mutual promises made in exchange for each other by each of the two contracting parties." *Sully-Miller Contracting Co. v. Gledson/Cashman Constr., Inc.*, 126 Cal. Rptr. 2d 400, 403 (Ct. App. 2002) (quoting Corbin on Contracts § 1.23 (rev. ed. 1993)) (internal quotation marks omitted). Both sides of the bargain must have made promises. Here, the plaintiffs have identified an alleged promise by RJR (to allow customers to redeem Camel Cash certificates for rewards), but they have

not pointed to any promise they made to RJR. Nor do they argue that RJR sought a return promise in exchange for its own promise to allow consumers to exchange C-Notes for merchandise. They argue instead the requirements for a bilateral contract are met because they agreed to certain terms and conditions when they enrolled in the Camel Cash program. *See* Appellants' Reply Brief at 9; Compl. ¶ 26. Nothing in the complaint, however, suggests that these terms were anything more than *conditions* that the plaintiffs were required to satisfy to trigger RJR's duty to perform, as opposed to promises that the plaintiffs were bound to perform to avoid incurring their own contractual liability. "A condition is an event . . . which must occur . . . before performance under a contract becomes due." Restatement (Second) of Contracts (hereinafter Restatement) § 224 (1981). A promise, by contrast, "is an express or implied declaration in a contract that raises a duty to perform and subjects the promisor to liability for breach for failure to do so." 13 Richard A. Lord, *Williston on Contracts* (hereinafter Williston) § 38:5 (4th ed. 2012). The plaintiffs have not alleged that they were bound to do anything. They therefore have not alleged the existence of an offer to enter into a bilateral contract.[1]

### 2. *Unilateral Contract*

**[3]** We reach a different conclusion as to the plaintiffs' theory that RJR made an offer to enter into a *unilateral* contract. In contrast to a bilateral contract, a unilateral contract involves the exchange of a promise for a performance. *See*

---

[1]It is, of course, possible for a consumer rewards program to involve a bilateral contract. Frequent flyer programs, for example, may be governed by membership agreements that impose contractual duties on both sides of the bargain, exposing airlines and travelers alike to potential contractual liability. *See, e.g.*, *Ginsberg v. Northwest, Inc.*, 653 F.3d 1033, 1035, 1040 (9th Cir. 2011); *Am. Airlines, Inc. v. Am. Coupon Exch., Inc.*, 721 F. Supp. 61, 63 (S.D.N.Y. 1989). Here, however, the plaintiffs have not alleged an offer or contract involving reciprocal duties, and therefore they have not alleged a bilateral contract.

*Harris v. Time, Inc.*, 237 Cal. Rptr. 584, 587 (Ct. App. 1987). The offer is accepted by rendering a performance rather than providing a promise. *See* Restatement § 45 cmt. a. "Typical illustrations are found in offers of rewards or prizes . . . ." *Id.*

**[4]** RJR argues that its C-Notes, whether read in isolation or in combination with the catalogs, were not offers, but invitations to make an offer. RJR relies on the common law's general rule that "[a]dvertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell." *Id.* § 26 cmt. b. RJR emphasizes that two judicial decisions have applied this general rule to customer rewards programs similar to the Camel Cash program, *see Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 122-27 (S.D.N.Y. 1999); *Alligood v. Procter & Gamble Co.*, 594 N.E.2d 668, 668-70 (Ohio Ct. App. 1991) (per curiam), and urges us to apply the rule here as well. We decline to do so.

First, it is not clear that the common law rule upon which RJR relies applies under California law. *See Donovan*, 27 P.3d at 710 (stating that "[t]his court has not previously applied the common law rules upon which defendant relies, including the rule that advertisements generally constitute invitations to negotiate rather than offers," observing that "such rules . . . have been criticized on the ground that they are inconsistent with the reasonable expectations of consumers and lead to haphazard results," citing Melvin Aron Eisenberg, *Expression Rules in Contract Law and Problems of Offer and Acceptance*, 82 Cal. L. Rev. 1127, 1166-72 (1994), and concluding that "[i]n the present case . . . we need not consider the viability of the black-letter rule regarding the interpretation of advertisements").

**[5]** Second, even assuming California law incorporates the common law rule, that rule includes an exception for offers of a reward, including offers of a reward for the redemption of coupons. As a leading contract law treatise explains,

> It is very common, where one desires to induce many people to action, to offer a reward for such action by general publication in some form. A statement that plausibly makes an offer of this kind must be reasonably interpreted according to its terms and the surrounding circumstances. If the statement, properly interpreted, calls for the performance or commencement of performance of specific acts, action in accordance with such an interpretation will close a contract or make the offer irrevocable. There are many cases of an offer of a reward for the capture of a person charged with crime, for desired information, for the return of a lost article, for the winning of a contest, or *for the redemption of coupons*. In addition, advertisements placed by buyers inviting sellers to ship goods without prior communication are clear cases of offers. The contracts so made are almost always unilateral.

Corbin on Contracts (hereinafter Corbin) § 2.4 (2012) (emphasis added) (footnotes omitted). RJR does not discuss this exception, relying instead on *Leonard* and *Alligood*. Several courts, however, have applied the exception to customer rewards programs. *See, e.g.*, *Payne v. Lautz Bros.*, 166 N.Y.S. 844, 845-46, 848 (N.Y. City Ct. 1916) (reward coupons included with packages of soap wrappers), *aff'd without opinion*, 168 N.Y.S. 369 (N.Y. Sup.), *aff'd without opinion*, 171 N.Y.S. 1094 (N.Y. App. Div. 1918), *cited with approval in* Corbin § 2.4 n.14; *Reynolds v. Philip Morris U.S.A., Inc.*, No. 05-cv-1876 (S.D. Cal. June 5, 2007) (order denying defendant's motion for summary judgment) (reward points obtained by purchasing Marlboro cigarettes), *rev'd on other grounds*, 332 F. App'x 397 (9th Cir. June 2, 2009); *Wolens v. Am. Airlines, Inc.*, 626 N.E.2d 205, 208 (Ill. 1993) (reward miles awarded for flying on American Airlines), *rev'd on other grounds*, 513 U.S. 219 (1995).[2]

---

[2]*Payne* found an enforceable unilateral contract where the defendant advertised that it would give a round-trip train ticket to consumers who

**[6]** Like these courts, we see no justification for applying the general common law rule, rather than the common law exception, to circumstances such as those presented here. The common law rule that advertisements ordinarily do not constitute offers arose to address a specific problem — the potential for over-acceptance — not applicable here. Professor Farnsworth explains that an offer ordinarily does not exist

> when a proposal for a limited quantity has been sent to more persons than its maker could accommodate. . . . Otherwise, supposing a shopkeeper were sold out of a particular class of goods, thousands of members of the public might crowd into the shop and demand to be served, and each one would have a right of action against the proprietor for not performing his contract. A customer would not usually have reason to believe that the shopkeeper intended exposure to the risk of a multitude of acceptances resulting in a number of contracts exceeding the shopkeeper's inventory.

E. Allan Farnsworth, *Contracts* (hereinafter Farnsworth) § 3.10, at 134 (4th ed. 2004) (footnote and internal quotation marks omitted). This problem arises in the case of ordinary

collected 25 coupons from the defendant's soap packages and redeemed them for the train tickets (or other merchandise in the defendant's rewards catalogs) at the defendant's stores. *See* 166 N.Y.S. at 844-48. In *Reynolds*, the court held that a genuine issue of material fact existed regarding whether the plaintiff accepted an offer to enter into a unilateral contract by purchasing Marlboro cigarettes, clipping Marlboro Miles certificates, saving the certificates and eventually mailing a sufficient number of certificates to Philip Morris to exchange for products. *See Reynolds v. Philip Morris U.S.A.*, *supra*, at 8. In *Wolens*, the Illinois Supreme Court recognized a contractual relationship between American Airlines and members of its frequent flyer program, stating, "When a member earns frequent flyer miles by flying on American or by doing business with American affiliates, a contractual relationship is formed which vests the frequent flyer with the right to earn specific travel awards." 626 N.E.2d at 208.

advertisements for the sale of goods or services, but not here. First, RJR's ostensible purpose in promoting the Camel Cash program was not to sell a limited inventory, but to induce as many consumers as possible to purchase Camel cigarettes. Second, RJR could not have been trapped into a situation in which acceptances exceeded inventory. RJR alone decided how many C-Notes to distribute, so it exercised absolute control over the number of acceptances. As Farnsworth explains, "if the very nature of a proposal restricts its maker's potential liability to a reasonable number of people, there is no reason why it cannot be an offer." *Id.* at 135.

   **[7]** For these reasons, we find no reason to presume that RJR's communications did not constitute an offer merely because they were addressed to the general public in the form of advertisements. The operative question under California law, therefore, is simply "whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed." *Donovan*, 27 P.3d at 710. Construing the complaint in the light most favorable to the plaintiffs, and drawing all reasonable inferences from the complaint in the plaintiffs' favor, *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005), we conclude that the plaintiffs have adequately alleged the existence of an offer to enter into a unilateral contract, whereby RJR promised to provide rewards to customers who purchased Camel cigarettes, saved Camel Cash certificates and redeemed their certificates in accordance with the catalogs' terms.

   We reach this conclusion in light of the totality of the circumstances surrounding RJR's communications to consumers: the repeated use of the word "offer" in the C-Notes; the absence of any language disclaiming the intent to be bound; the inclusion of specific restrictions in the C-Notes ("Offer

restricted to smokers 21 years of age or older"; "Offer good only in the USA, and void where restricted or prohibited by law"; "Check catalog for expiration date"; "Limit 5 requests for a catalog per household"); the formal enrollment process, through which consumers submitted registration forms and RJR issued enrollment numbers; and the substantial reliance expected from consumers.[3] *Donovan* explains that under the common law "advertisements have been held to constitute offers where they invite the performance of a specific act without further communication and leave nothing for negotiation." 27 P.3d at 710. These requirements are satisfied here. RJR's alleged offer invited the performance of specific acts (saving C-Notes and redeeming them for rewards in accordance with the catalog) without further communication, and leaving nothing for negotiation.

RJR properly emphasizes that the alleged offer left aspects of RJR's performance to RJR's discretion. The offer did not specify when future catalogs would be issued, what rewards merchandise they would include, what quantities of merchandise would be available or how many C-Notes would be required to exchange for particular items. The plaintiffs, how-

---

[3]The plaintiffs' substantial reliance distinguishes this case from cases involving garden-variety advertisements. To take advantage of the Camel Cash program, consumers were expected to purchase Camel cigarettes and accumulate Camel Cash certificates for a period of weeks, months or even years. *See* Compl. ¶ 29 (alleging that "[t]he number of Camel Cash certificates needed to obtain merchandise . . . varied from as little as one hundred to many thousands," and noting that RJR "further encouraged plaintiffs and other Class members to collect their Camel Cash (as opposed to redeeming them as soon as possible) because merchandise listed in defendant's catalogs for redemption by a greater number of coupons was disproportionately more valuable than the merchandise which could be redeemed by fewer coupons"). Citing an offer for a reward as an example, Corbin explains that "a proposal is likely to be deemed to be an offer if it is foreseeable that the addressee of the proposal will rely upon it." Corbin § 2.2. This is so because a member of the public is unlikely to undertake substantial reliance in the absence of a binding commitment from the offeror — i.e., on the mere chance that the offeror will perform.

ever, do not allege that these were essential terms. *See* Compl. ¶ 31 ("[I]t was not a contract to obtain a specific item or good, such as a 'Joe Camel' jacket or ashtray."). Instead, they allege a contract the essence of which was their general right to redeem their Camel Cash certificates, during the life of the program, for whatever rewards merchandise RJR made available, with RJR's discretion limited only by the implied duty of good faith performance. The presence of discretion thus does not preclude the existence of an offer.[4]

## B.  Definiteness

**[8]** RJR argues that, even if there was an offer, any contract arising from it would be too indefinite to be enforced. To be enforceable under California law, a contract must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 699 (Ct. App. 2006) (quoting *Ersa Grae Corp. v. Fluor Corp.*, 2 Cal. Rptr. 2d 288, 294 (Ct. App. 1991)) (internal quotation marks omitted). "The terms of a contract are reasonably certain if they provide a basis for determining

---

[4]In its petition for rehearing, RJR argues that the plaintiffs have asserted only a bilateral contract and not a unilateral contract. There is no question, however, that the plaintiffs — in their complaint, as well as in the district court and on appeal — have consistently alleged acceptance by performance, which is the essence of a unilateral contract. *See* Appellants' Opening Brief at 14, 19, 22, 26, 30 n.2 (asserting that the plaintiffs accepted RJR's offer by filling out applications, enrolling in the program, buying cigarettes, acquiring and saving C-Notes and complying with the program's terms and conditions). RJR thus had fair notice of the plaintiffs' theory that contractual liability arose from these acts of performance, and the issue was fairly presented to this court. We focus on the substance of the plaintiffs' claims, not the plaintiffs' labels. *See* Farnsworth § 3.4, at 112 (explaining that "[t]he dichotomy between bilateral and unilateral plays a less important role in the contemporary analysis of contracts" and noting that the "Restatement Second abandons the use of the terms because of 'doubt as to the utility of the distinction' " (quoting Reporter's Note to Rest. § 1)).

the existence of a breach and for giving an appropriate reme-
dy." *Id.* (quoting Restatement § 33(2)) (internal quotation
marks omitted).

### 1. *Existence of a Breach*

**[9]** The first of these requirements is satisfied here. The
plaintiffs do not claim that they were entitled to particular
merchandise, but that RJR was required to make reasonable
quantities of rewards merchandise available during the life of
the Camel Cash program — a duty RJR allegedly breached by
failing to make *any* merchandise available after October 1,
2006. This alleged breach is readily discernible. *See* Restate-
ment § 33 cmt. b ("[T]he degree of certainty required may be
affected by the dispute which arises and by the remedy
sought. Courts decide the disputes before them, not other
hypothetical disputes which might have arisen.").**5**

### 2. *Giving an Appropriate Remedy*

The second requirement — that the contract provide a basis
for giving an appropriate remedy — presents a closer ques-
tion. As noted, RJR exercised considerable discretion in
deciding what rewards would be offered. We cannot know
precisely what merchandise the plaintiffs might have received
had RJR fully performed its obligations, an uncertainty that

---

**5**That the alleged contract afforded RJR some discretion in performing
does not compel the conclusion that the alleged contract is too indefinite
to be enforced. *See* Restatement § 34 cmt. a ("If the agreement is other-
wise sufficiently definite to be a contract, it is not made invalid by the fact
that it leaves particulars of performance to be specified by one of the par-
ties."); Corbin § 4.4 ("[T]he fact that one of the parties reserves the power
of fixing or varying the price or other performance is not fatal if the exer-
cise of this power is subject to prescribed or implied limitations, as that
the variation . . . must be reasonable or in good faith." (footnote omitted));
*Cal. Lettuce Growers, Inc. v. Union Sugar Co.*, 289 P.2d 785, 791 (Cal.
1955) ("[W]here a contract confers on one party a discretionary power
affecting the rights of the other, a duty is imposed to exercise that discre-
tion in good faith and in accordance with fair dealing.").

could inhibit the process of determining a remedy. *See Busta-mante*, 45 Cal. Rptr. 3d at 699 ("[T]he limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." (quoting *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 814 (Ct. App. 1993)) (internal quotation marks omitted)).

It is not clear, however, that damages could not be ratio-nally assessed here. RJR's internal documents assigned C-Notes values, such as 15 cents per $1 note, that might afford a basis for assessing damages. In the alternative, RJR's final rewards catalog and pre-breach performance might provide a basis for giving an appropriate remedy.[6]

**[10]** We should not lightly conclude, especially at this early stage in the proceedings, that there is no basis for deter-mining an appropriate remedy where, as here, the allegations suggest that the parties intended to contract. *See Cal. Lettuce Growers*, 289 P.2d at 790 ("The law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." *(quoting McIllmoil v. Frawley Motor Co.*, 213 P. 971, 972 (Cal. 1923))); Corbin § 4.1 ("If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left."). Here, the allegations of the complaint support the inference that the parties intended to contract. The plaintiffs enrolled in the Camel Cash program, purchased Camel cigarettes and collected Camel Cash certificates. RJR accepted the plaintiffs' registration forms, issued them enrollment numbers, performed under the program for 15 years and, according to internal RJR docu-

---

[6]Neither side has suggested that the value printed on the face of the C-Notes — "1/1000 of 1¢" — reflects their actual value.

ments, treated outstanding C-Notes as a binding obligation and an outstanding financial liability. According to the documents, RJR closely monitored its exposure under the program, and even went so far as to create a financial reserve to cover that exposure — actions consistent with a legally binding commitment.[7]

**[11]** We also consider the plaintiffs' substantial reliance on RJR's promises, as well as the substantial benefits RJR accrued by virtue of consumers' reliance on the Camel Cash program. Corbin explains that, "[i]f one party has greatly benefited by part performance or if one party has relied extensively on the agreement, the court should go to great lengths to find a construction of the agreement that will salvage it." Corbin § 4.3 (footnotes omitted). For these reasons, dismissal for indefiniteness is unwarranted.

## C.   Mutuality of Obligation & RJR's Right to Terminate

RJR argues that the plaintiffs' contract claim must be dismissed for lack of mutuality of obligation because RJR had an unrestricted right to terminate the Camel Cash program at will, and without notice. The complaint discusses RJR's right to terminate the Camel Cash program in three paragraphs:

> 6.   Plaintiffs do not dispute that defendant had the right to terminate the Camel Cash program. However, defendant made a deliberate and calcu-

---

[7]RJR argues that the internal documents are irrelevant because the existence of a contract turns on the *objective* intentions of the parties, not their unexpressed subjective understandings. RJR is correct that questions of mutual assent and interpretation turn in large part, though not always, on the parties' objective manifestations. *See* 1 Witkin, Summary of Cal. Law, Contracts § 116 (10th ed. 2008); 1 Williston § 3:5. We are not aware of any authority, however, extending that principle to an assessment of whether, for the purposes of applying the definiteness requirement, the parties in fact intended to contract.

lated choice to waive any right to terminate the program "without notice" and instead provided six months prior notice. Thus, during that six-month period, from approximately October 2006 through March 2007, defendant was obligated to comply with the terms of its contract with plaintiffs. . . .

32.   Also, the breach of contract alleged is *not* that Reynolds was prohibited from terminating the program but that, during the program's duration, Reynolds had the obligation to perform through the program's termination date. Certain (but not all) of the Camel Cash catalogs state that Reynolds could terminate the Camel Cash program without notice. Defendant, however, waived any right to terminate without notice when, on or about October 1, 2006, it announced by mailing a notice to program members, that the program would terminate as of March 31, 2007. Namely, defendant gave notice of termination and represented that plaintiffs could redeem their Camel Cash certificates for six months. . . .

54.   In or about October 2006, defendant announced that it was terminating the Camel Cash program as of March 31, 2007. Thus, the contract was in effect until March 31, 2007 when defendant terminated the program.

Compl. ¶¶ 6, 32, 54.

**[12]** Given our conclusion that the plaintiffs have alleged an offer to enter into a unilateral rather than a bilateral contract, RJR's reliance on mutuality of obligation necessarily fails: that doctrine does not apply to unilateral contracts. *See, e.g.*, *Asmus v. Pac. Bell*, 999 P.2d 71, 78 (Cal. 2000) ("In the unilateral contract context, there is no mutuality of obligation."). RJR's argument nonetheless raises important questions about the viability of the plaintiffs' contract claim. If, in

fact, RJR reserved an *unrestricted* right to terminate the Camel Cash program, *without notice*, then the plaintiffs' contract claim may well be untenable.

First, a reservation of an unrestricted right to terminate could have precluded RJR's communications from constituting an offer. As Corbin explains, if an offeror expressly reserves not only the right to revoke the offer at will and without notice, but also the *unrestricted right not to perform*, then the offer is not legally effective as an offer at all: "A purported offer that reserves the power to withdraw at will even after an acceptance should not be described as an offer at all, but as an invitation to submit an offer." Corbin § 2.19.[8]

Second, if RJR reserved an unrestricted right to terminate the Camel Cash program at any time and without notice, then RJR's promise to perform could be deemed illusory, and hence unenforceable. As Farnsworth explains, when a promise "appears on its face to be so insubstantial as to impose no obligation at all on the promisor — who says, in effect, 'I will *if* I want to' " — the promise is not enforceable. Farnsworth § 2.13, at 75. Accordingly, an enforceable termination clause that gives a promisor an unrestricted power to terminate a contract at any time, without notice, renders the promise illusory and unenforceable, at least so long as the purported contract remains wholly executory.

Either of the foregoing principles could possibly serve to defeat the plaintiffs' contract claim here. The complaint, however, does not definitively allege that RJR reserved an *unre-*

---

[8]It does not appear that the plaintiffs' beginning of performance (by purchasing Camel cigarettes and saving C-Notes) would alter that result. It is true as a general matter that an offeree's part performance may render an offer to enter into a unilateral contract irrevocable. *See Steiner v. Thexton*, 226 P.3d 359, 368 (Cal. 2010); Restatement § 45(1). That default principle, however, does not apply when the offer expressly reserves the right to revoke notwithstanding the offeror's beginning of performance. *See* Restatement § 45 cmt. b.

*stricted* right to terminate its duty to perform. The complaint alleges only that "[*c*]*ertain* (but not all) of the Camel Cash catalogs state that Reynolds could terminate the Camel Cash program without notice." Compl. ¶ 32 (emphasis added). The complaint, moreover, alleges that RJR "waived any right to terminate without notice when, on or about October 1, 2006, it announced by mailing a notice to program members, that the program would terminate as of March 31, 2007." *Id.* Dismissal is therefore unwarranted on the current record.

## D.   Statute of Limitations

**[13]** RJR's argument that the plaintiffs filed their contract claim outside the statute of limitations is unpersuasive. At this stage of the pleadings, the plaintiffs have plausibly alleged a written contract. A four-year limitations period applies to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing." Cal. Civ. Proc. Code § 337(1); *see Ryer v. Stockwell*, 14 Cal. 134, 138 (Cal. 1859) (holding that acceptance of a unilateral "reward" contract through performance is a contract on a written instrument for purposes of the statute of limitations); *see also* 3 Witkin, Cal. Proc., Actions § 510 (5th ed. 2008) ("[I]f the contract is written, the action is on that contract, and the 4-year statute applies, even though the cause of action is based not on an express covenant but on a promise implied from the contract.")*; Century Indem. Co. v. Superior Court*, 58 Cal. Rptr. 2d 69, 72-73 (Ct. App. 1996) ("[W]hen the parties to the agreement sue for breach of good faith, the action is one directly founded on the written instrument." (emphasis omitted)). The plaintiffs filed this action in 2009, within four years of RJR's alleged breach.

## IV.   PROMISSORY ESTOPPEL

Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reli-

ance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *See US Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Ct. App. 2005).

Here, the parties chiefly dispute the first element — whether the plaintiffs have adequately alleged that RJR made a promise clear and unambiguous in its terms. We conclude this element is satisfied: the C-Notes promised consumers that if they saved C-Notes and redeemed them for rewards merchandise in accordance with the catalog, RJR would provide the merchandise. These terms are neither unclear nor ambiguous. *See Aceves v. U.S. Bank, N.A.*, 120 Cal. Rptr. 3d 507, 514-15 (Ct. App. 2011) (holding that a bank's promise — to work with the plaintiff on a mortgage reinstatement and loan modification if the plaintiff no longer pursued relief in bankruptcy court — was a clear and unambiguous promise to negotiate, even though it left open the terms of any loan modification agreement that might be discussed). RJR correctly points out that its communications were unspecific as to precisely what merchandise would be offered in future catalogs. The plaintiffs, however, do not rest their promissory estoppel claim on an alleged promise to provide particular merchandise.

**[14]** The plaintiffs' promissory estoppel claim, though, is subject to the same definiteness requirement as their breach of contract claim. *See id.* at 514. This claim therefore rises or falls with the contract claim. Given that we have concluded that the alleged contract is sufficiently definite to survive a motion to dismiss, we vacate dismissal of the promissory estoppel claim as well. If further proceedings demonstrate that the contract claim fails for indefiniteness, the promissory estoppel claim will likely fail for the same reason.[9]

---

[9]RJR's argument that an implied promise — such as an implied promise to maintain reasonable quantities of merchandise — cannot support a claim for promissory estoppel is contrary to California law. *See Copeland v. Baskin Robbins U.S.A.*, 117 Cal. Rptr. 2d 875, 885 (Ct. App. 2002) (citing *Drennan v. Star Paving Co.*, 333 P.2d 757, 759-60 (Cal. 1958) (applying promissory estoppel to an implied promise not to revoke a bid)).

## V.   UCL

The UCL prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The plaintiffs allege RJR violated the UCL when, in October 2006, it "announced that it was terminating the Camel Cash program as of March 31, 2007" and "represented that holders of the Camel Cash certificates could redeem their coupons for another six months." Compl. ¶ 67. They allege that "[t]hese representations were unfair and deceptive . . . in that they stated that defendant would provide merchandise redeemable by Camel Cash from at least October 2006 through March 2007 when defendant had no intention of honoring any requests to redeem Camel Cash certificates." *Id.*

**[15]** Because the plaintiffs' UCL claim sounds in fraud, they are required to prove "actual reliance on the allegedly deceptive or misleading statements," *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011) (quoting *In re Tobacco II Cases*, 207 P.3d 20, 26 (Cal. 2009)) (internal quotation marks omitted), and that "the misrepresentation was an immediate cause of [their] injury-producing conduct," *In re Tobacco II Cases*, 207 P.3d at 39. The complaint does not satisfy these requirements.

**[16]** In particular, the plaintiffs do not allege reliance. They do not allege that they purchased additional Camel cigarettes in reliance on the October 1 announcement. They also do not allege that they delayed redeeming their saved Camel Cash certificates in reliance on the announcement. Even if they had alleged delay, they do not explain how this delay could have caused their injury: under the allegations of the complaint, RJR ceased accepting C-Notes for redemption as soon as it delivered the October 1 announcement, so delay could not have caused the plaintiffs' loss. Given the absence of an alleged causal connection between the alleged misrepre-

sentations and the plaintiffs' injuries, the district court properly dismissed the UCL claim.[10]

## VI.    CLRA

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.' " *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)). Among the practices made unlawful by the CLRA are three pled by the plaintiffs here: "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; "[a]dvertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity"; and "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Cal. Civ. Code § 1770(a)(5), (10), (14). *See* Compl. ¶¶ 80-82.

As with the UCL, consumers seeking to recover damages under the CLRA based on a fraud theory must prove "actual reliance on the misrepresentation and harm." *Nelson v. Pearson Ford Co.*, 112 Cal. Rptr. 3d 607, 638 (Ct. App. 2010); *accord Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Ct. App. 2010); *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 94 (Ct. App. 2009).

[17] The plaintiffs have not satisfied these requirements

---

[10]The plaintiffs argue for the first time on appeal that their UCL claim is premised on alleged misrepresentations *before* the October 2006 announcement. Brief of Appellants at 47. The plaintiffs neither pled this theory nor presented it to the district court in opposing dismissal, and we decline to reach it for the first time on appeal. *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).

here. Before October 1, 2006, RJR represented that consumers could redeem Camel Cash certificates for rewards. The plaintiffs have adequately alleged that they relied on those representations and that they were harmed as a consequence. The plaintiffs do not assert, however, that those representations were false or deceptive when made. On the contrary, they allege that RJR intended to be bound by the statements, that RJR in fact honored the terms of the program for 15 years and that RJR first "determined to end the Camel Cash program" — and hence not to honor its alleged commitments — on or about October 1, 2006. Compl. ¶ 45. The complaint thus does not allege misrepresentations prior to October 1, 2006. With respect to the October 1, 2006 announcement, the plaintiffs do assert that RJR made representations that were false when made. They have not, however, alleged that they relied on those representations or, if they did rely, that their reliance caused them harm, as we explained in connection with the plaintiffs' UCL claim. We therefore affirm dismissal of the plaintiffs' CLRA claim as well.

## VII.   DISMISSAL WITH PREJUDICE

The district court did not abuse its discretion by dismissing the plaintiffs' UCL and CLRA claims with prejudice. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the plaintiff has previously filed an amended complaint, . . . the district court's discretion to deny leave to amend is 'particularly broad.' " (quoting *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002))). Any requests by the plaintiffs to further amend the pleadings should be addressed to the district court.

## VIII.   CONCLUSION

We affirm dismissal of the plaintiffs' UCL and CLRA claims. We reverse dismissal of the plaintiffs' breach of contract and promissory estoppel claims.

The parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**