PARKER, J.,
dissenting as to Part I:
Because the complaint plausibly alleges that Appellees Gordon Howard Associates and Skypatrol, LLC (the “Companies”) promised to reimburse Appellant ACP, Inc. for the expenses it incurred in pursuit of the proposed transaction and failed to do so, I respectfully dissent. The majority correctly concludes that a unilateral contract only binds the promisor, and thus only the promisee, once it has performed, can seek to enforce the contract. But at this point, I part ways with the majority because the fact that the transaction may have been proposed by ACP does not mean that ACP was the promisor. Rather, the language of the letter agreement— and even the arguments of the parties— indicates that the Companies were the promisors, and ACP the promisee. Once ACP performed, the Companies were bound and, having failed to pay, are liable to ACP. Consequently, ACP’s complaint, which contains these assertions, states a claim that should not have been dismissed under Rule 12(b)(6).
Although we assume that the parties are familiar with the relevant facts, I lay out some of the key ones alleged by ACP. The dispute arises from a letter agreement sent by ACP to the Companies in January 2012. The letter references an “indication of [ACP’s] interest” in the “potential acquisition of [the Companies].” The final paragraph of the letter clarifies that the “letter agreement is an expression of mutual intent only and is non-binding, except for the terms related to Exclusivity and Expenses, which will be binding upon each of the undersigned.” The “Expenses” provision, which frames the dispositive issue in this litigation, provides that the Companies “shall reimburse [ACP] for its actual out- *496 of-pocket expenses incurred in pursuit of the Transaction.” It is undisputed that the Companies signed and returned the letter.
The complaint alleges that although ACP undertook an investigation into the transaction, thus triggering the Companies’ promise to reimburse ACP, the Companies refused to honor that promise. ACP argued below and on appeal that the letter agreement is a unilateral contract and that the Companies promised to reimburse ACP in exchange for the investigation it conducted in pursuit of the transaction. The Companies argue that the contract is an unenforceable unilateral contract because ACP, the offeror, offered no consideration. But this argument is an incorrect one that is not consistent with basic contract principles.
In a unilateral contract, the promisor makes a promise in exchange for performance by another party, the promisee. Salteriale v. R.J. Reynolds Tobacco Co. 697 F.3d 777, 785 (9th Cir.2012). The majority is correct in its fundamental premise that only the promisor in a unilateral contract is under an enforceable legal duty to perform and that the promisor’s obligation to fulfill its promise is triggered once the promisee renders performance. Asmus v. Pac. Bell, 23 Cal.4th 1, 96 Cal.Rptr.2d 179, 999 P.2d 71, 75 (2000). The majority also correctly recognizes that the pertinent inquiry is which party is the “promisor” (and thus bound by an enforceable legal duty), and which party is the “promisee” (and thus free of any legal duty to perform).[1] The majority errs, however, in concluding that ACP must be the promisor merely because it initiated the transaction and proposed the agreement.
The majority summarily concludes that ACP was the promisor, and thus may not seek enforcement of the contract, reasoning that “ACP was the promisor under the letter agreement because ACP, using its own letterhead, conveyed an offer to Gordon Howard and Skypatrol concerning a potential acquisition.” Maj. Op. at 494. But this conclusion is wrong because it is irrelevant which party initially proposed the transaction. The dispositive question under California law is which party made a promise to perform. Here, indisputably, the Companies did so.
Both parties invoke the “Brooklyn Bridge” example of a unilateral contract well known to all first year law students. The promisor tells the promisee, “I will pay you $100 if you walk across the Brooklyn Bridge.” The promisee walks across the Brooklyn Bridge, and is now entitled to her $100. But the respective obligations would be no different merely because it was the promisee who proposed the transaction. For example, the promis-ee asks the promisor, “Will you pay me $100 if I cross the Brooklyn Bridge?” The promisor says, ‘Yes, I will pay you,” and the promisee walks across the Brooklyn Bridge. The promisee, by soliciting the promise, is no less the promisee, and is no less entitled to the $100 reward.
The confusion stems from the mistaken belief by the parties and the majority that *497 offeror and promisor are synonymous terms. They are not. It may very well be the case, as it was here, that the party proposing the transaction did so by soliciting a promise conditioned on its performance of some act. If the other party agrees and makes a promise, a unilateral contract is formed. In none of the cases cited by the majority or the Companies have - California courts suggested that a promisee in a unilateral contract is not entitled to enforce the contract merely because he solicited the promise, rather than waiting for one to arrive at his doorstep.
The simple facts of this transaction have not been lost on the parties. Indeed, the Companies admit that by receipt of the letter agreement, “the Companies were asked to make a promise.” Later, the Companies assert that “[i]f the sale had gone through, we would not be here today,” suggesting that their promise to reimburse ACP would be enforceable if the Companies had been satisfied with the result of the investigation.[2] In any event, the terms of the promise were clear: As alleged in the complaint, the Companies promised to reimburse ACP for expenses incurred in investigating the transaction.
The Companies and the majority stop short of considering the practical implications of failing to enforce a garden variety contract such as this one. Intercompany transactions take place only because each side has made a calculated decision that the potential benefit of the transaction outweighs the costs — legal fees, due diligence, efforts to obtain financing, etc. But a party can induce a counterparty to consider a transaction that would ordinarily be undesirable by agreeing to displace some of those costs. These types of commercial agreements are quite common, and allow parties who otherwise would be uninterested in a joint transaction to reallocate costs such that the transaction has the potential to be mutually beneficial.
That is the situation contemplated here: ACP was apparently drawn to the transaction in part because it knew that the costs would be partially borne by the Companies. It drafted (allegedly with the Companies’ input) an agreement reflecting an allocation of costs under which the Companies’ promise to pay arose when ACP undertook the investigation. The Companies contend that as the transaction proceeded, they became dissatisfied with the level of the costs and the quality of the investigation, and once the transaction did not close, they were unwilling to absorb those costs. But while this dissatisfaction may at some point cause the parties to litigate the issue of damages, it has nothing to do with the existence of an enforceable contract. In sum, whatever the law of contract may say about the offeror/offeree relationship, the fundamental goal of contract law “is to give effect to the mutual intention of the parties.” Powerine Oil Co., Inc. v. Super. Ct., 37 Cal.4th 377, 33 Cal.Rptr.3d 562, 118 P.3d 589, 597-98 (2005). ACP — and the Companies — are entitled to have that intention given effect.

. The district court and the parties focus intensely on the identity of the offeror. But neither the district court nor the Companies provide support for the proposition that the identity of the offeror has any bearing on whether a contract was properly formed, and the majority notably abandons that rhetoric, asking instead which party was the promisor. At any rate, the purpose of examining the offeror/offeree relationship is to determine whether there is "mutual assent,” a necessary element of any contract. Donovan v. RRL Corp., 26 Cal.4th 261, 109 Cal.Rptr.2d 807, 27 P.3d 702, 709 (2001). We see no credible argument that the Companies, in signing a letter that unambiguously bound them to reimburse ACP for its due diligence costs, failed to assent to the formation of the agreement.

. This assertion also illuminates the Companies’ motivation for objecting to the reimbursement — they are simply unhappy that the transaction did not go through. Neither the majorily nor the Companies point to any language in the letter agreement suggesting that the Companies' obligation was only enforceable if the transaction closed.